IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| MANUEL JESUS CORDOVA,<br><br>    Petitioner,<br><br>vs.<br><br>DORA B. SCHRIRO, et al.,<br><br>    Respondents. | No. CV 08-438-TUC-FRZ (CRP)<br><br>**REPORT AND RECOMMENDATION** |

Manuel Cordova ("Petitioner"), presently an inmate at the Arizona State Prison Complex in Kingman, Arizona, filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254 on August 1, 2008. (Doc 1). Petitioner challenges the aggravated sentence he received after pleading guilty to manslaughter. Petitioner claims: (1) his sentence is excessive in violation of the Eighth Amendment and (2) his right to due process was violated when the trial judge allegedly double-counted his gang affiliation as an aggravating factor. (Doc 1, p 6). Contesting the Petition, the Government argues that the claims are procedurally defaulted because they were not raised as federal issues with the state courts and, in the alternative, that the claims fail on the merits because 17 years for manslaughter is not excessive and the trial judge was permitted to use the gang affiliation as an aggravating factor. (Doc 11).

## I. FACTUAL AND PROCEDURAL HISTORY

On April 14, 2005, Petitioner was indicted for one count of first degree murder for the stabbing death of a rival gang member. (Doc 1-2, p 3[1]; Doc 1-2, p 40). The State filed an allegation of dangerous nature, a knife, and an allegation that the offense was committed to promote a street gang. (Doc 1-2, p 3). Petitioner pled guilty to manslaughter, a dangerous-nature, class 2 felony and the State dismissed the other charges. (Doc 1-2, p 40; Doc 11-1, Exhibit B). Under A.R.S. § 13-604(I), the established sentencing range for a class 2 dangerous felony is a mitigated term of 7 years, a presumptive term of 10.5 years, and an aggravated term of 21 years. Per the plea agreement, Petitioner agreed to a minimum available sentence of thirteen (13) years and a maximum available sentence of twenty-one (21) years. (Doc 11-1, Exhibit B, p 6). Nothing in the plea agreement stated that minimum sentence of thirteen (13) years was reached based on the gang-related nature of the murder. (Doc 11-1, Exhibit B).

At the change of plea hearing, Petitioner admitted, through his attorney, that he and victim "had gotten into a fight at the Tucson Mall. [Petitioner] used a knife and stabbed [victim] several times, and [victim] died." (Doc 11-1, Exhibit C, p 17). When asked by the judge if that was what happened, Petitioner answered "Yes, Your Honor." *Id*. At the hearing, the terms of the plea agreement were explained to Petitioner. (Doc 11-1, Exhibit C, pp 13-15). The judge reviewed the specific sentencing with Petitioner. She asked "So, it looks like that you're agreeing that the minimum sentence, under this plea, is thirteen years; and the maximum sentence is twenty-one years. Is that correct?" (Doc 11-1, Exhibit C, p 14). Petitioner answered "Yes, Your Honor." *Id*. The judge followed Petitioner's answer by asking, "[s]o the

---

[1] The Report and Recommendation cites to the electronic page numbers of documents as reflected in CM/ECF at the top of each page.

best that you could do is thirteen years, and anywhere from there to twenty-one; do you understand that?" (Doc 11-1, Exhibit C, pp 14-15). Petitioner replied, "Yes, I do." (Doc 11-1, Exhibit C, p 15).

The judge also asked Petitioner, in detail, if he understood and agreed to waive his rights. (Doc 11-1, Exhibit C, pp 15-17). The Judge specifically asked Petitioner if he understood his right to have a jury find any aggravating factors in the case. She asked:

> You would also have the right to have the jurors find any aggravating factors in the case. The aggravating factors would have to be proven to the jurors by a standard of beyond a reasonable doubt. If you take this plea, you allow me to find the aggravating factors by a lesser standard. That would, obviously, have some implications on you, because I'm going to be determining a sentence that you're going to get that's going to be in an aggravated range. Do you understand that?

(Doc 11-1, Exhibit C, p 16). Defendant replied, "Yes, Your Honor." *Id*. After the trial judge accepted the plea, she set a date for the sentencing hearing.

On March 17, 2006 the sentencing hearing was held. (Doc 11-1, Exhibit F). The State argued for the maximum 21 years under the plea agreement and the defense argued for the minimum 13 years. *Id*. In discussing Petitioner's plea, defense counsel argued that the plea agreement took into account the aggravating factor of the gang involvement. He said:

> In terms of the plea in this case, Your Honor, we received an agreement that he would plead to manslaughter. And as Your Honor is well aware, that concerns a ten point five year presumptive sentence. We agreed to a 13 year minimum sentence in this case because that took into account the gang enhancement that the State was going to seek on this case. So already built into this plea is the presumptive sentence of ten point five years for voluntary manslaughter as well as two point five additional years for the gang enhancement.
> In light of that, You [sic] Honor, I think that the only appropriate sentence that should be imposed in this case or the appropriate sentence is 13 years. That's the ten point five years for the manslaughter and I think that the aggravating factors that [the State] outlined and the mitigating factors would make no more than the presumptive sentence for the crime appropriate and then two point five for gang enhancement.

(Doc 11-1, Exhibit F, p 12). While trial counsel argued that minimum sentence in the plea agreement accounted for the gang-related nature of the murder, nothing in the plea agreement supports that statement. (Doc 11-1, Exhibit B).

The trial judge found both aggravating and mitigating factors and sentenced Petitioner to in the middle of the agreed upon range - to 17 years. (Doc 11-1, Exhibit F, pp 13-17). Included in the aggravating factors was the gang-related nature of the murder. (Doc 11-1, Exhibit F, p 49).

The plea agreement did not contain any provision stating the gang-related nature of the offense was included as part of the plea. (Doc 11-1, Exhibit B). It did not contain any provision identifying the minimum sentence as including the gang-related nature of the offense as an aggravating factor. In fact, under the waiver of rights in the plea agreement Defendant agreed:

> I further agree to waive my right to all trials. This includes any jury determination of aggravating factors beyond a reasonable doubt. I also agree that the Court, using a standard of preponderance of the evidence, may find the existence of aggravating or mitigating factors which may impact my sentence or disposition. I further agree that the rules of evidence do not apply to the determination of aggravating and mitigating factors.

(Doc 11-1, Exhibit B, p 8).

After he was sentenced, Petitioner filed a counseled petition for post-conviction relief under Arizona Rule of Criminal Procedure 32. (Doc 11-1, Exhibit H; Doc 1-1, pp 1-64). In this appeal, Petitioner argued the mitigating factors were not properly considered by the trial court and that the trial judge impermissibly aggravated his sentence for the gang-related nature after the plea agreement allegedly accounted for that aggravating factor. (Doc 1-2, pp 8-11). Specifically, Petitioner argued the plea agreement's 13-year minimum sentence represented an aggravated term because it was 2.5 years greater than the statutory presumptive term of 10.5 years imprisonment under A.R.S. § 13-604(I). In making this argument, Petitioner did not cite or argue federal law.

The State responded to the appeal by arguing that the trial court expressly considered the aggravating and mitigating factors and sentenced Petitioner in the middle of the agreed upon range. (Doc 11-1, Exhibit I, pp 68-71). In sentencing Petitioner to seventeen (17) years, the State contended that the trial court did not abuse its discretion and did not double-count the gang-related nature of the murder. The State pointed out that nothing in the plea agreement stated that the minimum agreed upon sentence accounted for the gang-related nature of the crime. (Doc 11-1, Exhibit I, pp 70-71). The State noted that nothing in the plea agreement nor at the change of plea hearing required Petitioner to admit that he stabbed the victim to promote criminal conduct of a gang. (Doc 11-1, Exhibit I, p 70). The State also noted that Defendant explicitly agreed that his sentence would range from thirteen to twenty-one years. (Doc 11-1, Exhibit B, p 6).

The trial court denied Petitioner's appeal. (Doc 1-1, pp 55-59). The trial court stated it considered Petitioner's age as a mitigating factor and pointed to the parts in the sentencing transcript supporting that statement. (Doc 1-1, p 57). The trial court acknowledged that at the sentencing hearing defense counsel argued the plea agreement included an enhancement for the gang-related nature of the offense but noted that the State consistently maintained that the plea agreement did not include the gang enhancement. (Doc 1-1, p 56, fn 1). The trial court also noted the plea agreement did not contain a provision including a gang enhancement in the minimum sentence and it pointed out that Petitioner agreed no other oral or written agreements were made between himself and the State. (Doc 1-1, p 57). Furthermore, the trial court noted that as part of the plea agreement, the State agreed to dismiss all other charges and allegations against Petitioner in return for his pleading guilty to manslaughter and that the agreement did not account for a gang enhancement. *Id*. The trial court concluded its analysis by noting that even if it had improperly included a gang enhancement, such an error was harmless because the other aggravating factors

1 when weighed against the mitigating factors would have resulted in the same sentence
2 in the middle of the agreed upon range. (Doc 1-1, p 58). The trial court did not cite
3 federal law.

4 Petitioner appealed the trial court's denial to the appellate court. In his appeal,
5 Petitioner did not allege federal constitutional errors nor cite to federal law. (Doc 1-2,
6 pp 1-13). The appellate court denied relief on Petitioner's appeal. (Doc 1-2, pp 19-
7 24). In doing so, the Court of Appeals did not cite any federal law. The Court
8 acknowledged the mitigated factors found by the trial court at sentencing, including
9 Petitioner's age. The Court found the trial court did not abuse its discretion and fully
10 considered the mitigating factors of Petitioner's age and immaturity. (Doc 1-2, p 21).

11 The appellate court also disagreed with Petitioner's second contention that his
12 sentence was improperly aggravated by the trial court for the gang-related nature of
13 the offense. (Doc 1-2, pp 22-23). The appellate court noted the trial court's
14 considerations that nothing in the plea agreement supported Petitioner's assertion and
15 that the State's decision to offer a minimum thirteen year plea did not mean it was
16 accounting for the gang-related nature of the offense but rather it was accounting for
17 the State dismissing the first-degree murder charge against Petitioner. (Doc 1-2, p 4).
18 The appellate court found the trial court did not abuse its discretion in aggravated
19 Petitioner's sentence based on the gang enhancement. The court also acknowledged
20 the trial court's position that even if it had improperly used the gang enhancement, it
21 was a harmless error because the other aggravating factors would have resulted in the
22 same aggravated sentence. (Doc 1-2, p 23).

23 After the Arizona Court of Appeals denied Petitioner's appeal, he filed a
24 Petition for Review with the Arizona Supreme Court. (Doc 1-2, pp 25-39). Petitioner
25 presented the same arguments to the Arizona Supreme Court and did not cite federal
26 law. The Arizona Supreme Court denied the Petition on August 17, 2007. (Doc 1-2,
27 p 47).

28

Petitioner filed the pending Habeas Petition with this Court on August 1, 2008. (Doc 1). The Government does not contest the timeliness of the Petition.

## II. ANALYSIS

### A. Exhaustion and Procedural Default

Pursuant to 28 U.S.C. § 2254(b)(1), before a federal court may consider a state prisoner's application for a writ of habeas corpus, the prisoner must have exhausted available state-court remedies. *Coleman v. Thompson,* 501 U.S. 722, 731 (1991). A state prisoner in a federal habeas action must exhaust his claims in the state courts "by invoking one complete round of the State's established appellate review process" before he may submit those claims in a federal habeas petition. *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). In Arizona, it is sufficient for a state prisoner to fairly present his claims to the Arizona Court of Appeals; he does not have to appeal those claims to the Arizona Supreme Court. *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999). Exhaustion of state remedies is required in order to give the "State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (internal citations omitted).

A petitioner must make the federal basis of a claim explicit either by citing specific provisions of federal law or federal case law, even if the federal basis of a claim is "self-evident." *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir.1999). A petitioner may also cite state cases that explicitly analyze the same federal constitutional claim. *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc). However, "it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Gray v. Netherland*, 518 U.S. 152, 163 (1996) (internal citations omitted).

In the case before this Court, Petitioner asserts two grounds for relief. He argues (1) his sentence is excessive in violation of the Eighth Amendment and (2) his right to due process was violated when the trial judge allegedly double-counted his gang affiliation as an aggravating factor. Petitioner did not bring either of these claims as a federal issue to the state courts.

In all of Petitioner's briefing in his post-conviction relief appeal, there is never a mention of an Eighth Amendment issue. Petitioner did argue his sentence, in the middle of the agreed upon range, was excessive due to the mitigating factor of his young age but this argument was not an Eighth Amendment argument. Instead, Petitioner contended his sentence was excessive under Arizona sentencing law because his youth should have been given greater weight as a mitigating factor. Petitioner did not allege his sentence was excessive in violation of the Eighth Amendment until he filed the pending Habeas Petition. Ground 1 was not exhausted in the state courts.

Petitioner also failed to federalize his claim that the gang enhancement was double-counted against him. For the first time in his Habeas Petition, Petitioner argues that the alleged double-counting of the gang enhancement violated his Fourteenth Amendment due process rights. In the state courts, Petitioner's argument focused on Arizona case law and Petitioner contended that the gang enhancement was an element already included in the minimum agreed upon sentence. Petitioner did not allege a federal law violation and did not cite to any federal case law. Ground 2 was not exhausted in the state courts.

If a claim has never been presented to the state court, a federal habeas court may determine whether state remedies remain available. *See Harris v. Reed,* 489 U.S. 255, 263 (1989). When a petitioner fails to exhaust his claims in state court but cannot now return to state court because the state procedural rules bar

-8-

Petitioner's claims, the claims are procedurally defaulted. *Franklin v. Johnson,* 290 F.3d 1223, 1231 (9th Cir.2002). In Arizona, determining whether a petitioner's unexhausted claims are procedurally defaulted involves consideration of Rule 32 *et seq.* of the Arizona Rules of Criminal Procedure. Rule 32 governs post-conviction relief proceedings and outlines the circumstances under which a state prisoner may seek relief. Ariz.R.Crim.P. 32.1. Under Rule 32.2, relief is barred on any claim which could have been raised in a direct appeal under Rule 31or a prior Rule 32 petition for post-conviction relief, with the exception of certain claims not applicable here. Ariz.R.Crim.P. 32.2. (For exceptions *see* Ariz.R.Crim.P. 32.1(d)-(h): State prisoners may seek relief in successive PCR Appeals for: claims of incarceration beyond sentence expiration, newly-discovered material facts, failure to timely file for relief not prisoner's fault, significant change in the law retroactively applicable, or actual innocence).

In the case before this Court, Petitioner has no further state remedy on his claims. Petitioner did not exhaust those claims as federal constitutional claims at the state court level because he did not fairly present those claims to the state courts. Petitioner argued these issues in his post-conviction appeal as questions solely of state law and not as federal law violations. Under Arizona law, Petitioner is now procedurally barred from bringing those federal claims to the state court.

If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *See Gray*, 518 U.S. at 162.

In his Motion for Supplemental Legal Authority ("Petitioner's Reply"), Petitioner asks this Court to look past the procedural default and address the merits. (Doc 13, pp 6-7). Petitioner argues his attorney failed to federalize his claims and

-9-

therefore, that failure is cause which should excuse his default. (Doc 13, pp 6, 10). Before an ineffective assistance of counsel claim can constitute "cause" to excuse the procedural default of another claim, the petitioner must have fairly presented that ineffectiveness to the state's highest court as an independent claim. *See Edwards v. Carpenter*, 529 U.S. 446, 451-453 (2000) ("ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"); *Murray v. Carrier*, 477 U.S. 478, 489 (1986) ("the exhaustion doctrine ... generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.").

Petitioner did not present an independent ineffective assistance of counsel claim regarding his appellate counsel in state court. Therefore, even if cognizable, his allegation of appellate counsel's ineffectiveness would not constitute cause. "So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*, [the federal courts] discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default." *Murray*, 477 U.S. at 488. Because Petitioner has not established cause to overcome the default, the Court need not analyze prejudice. *See Thomas v. Lewis*, 945 F.2d 1119, 1123 n.10 (9th Cir.1991).

Petitioner fails to show cause or prejudice for the default or a fundamental miscarriage of justice. *Teague v. Lane*, 489 U.S. 288, 298 (9th Cir.1989). When a petitioner's claims are procedurally barred and the petitioner has not shown cause or prejudice for the default, "the district court dismisses the petition because the petitioner has no further recourse in state court." *Franklin,* 290 F.3d at 1231

-10-

(internal citations omitted). Therefore, this Court recommends dismissing both of Petitioner's claims because they are procedurally defaulted.

**B.     Merits**

While this Court recommends dismissing the Petition because the claims are procedurally defaulted, this Court alternatively recommends denying the Petition on the merits.

Under the AEDPA, a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the State court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d); *see Williams v. Taylor,* 529 U.S. 362, 412-413 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review).  A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Taylor,* 529 U.S. at 405-06.  The state court's application of Supreme Court law must be more than incorrect or erroneous; it must be objectively unreasonable. *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).  "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ...." *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir.2004) (internal citations omitted).

Petitioner challenges the aggravated sentence he received after pleading guilty to manslaughter.  Petitioner claims: (1) his sentence is excessive in violation

-11-

of the Eighth Amendment and (2) his right to due process was violated when the trial judge allegedly double-counted his gang affiliation as an aggravating factor.

The Eighth Amendment to the United States Constitution proscribes the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Under the Eighth Amendment, the Supreme Court has noted that noncapital sentences are subject only to a "narrow proportionality principle" that prohibits sentences that are "grossly disproportionate" to the crime. *Ewing v. California*, 538 U.S. 11, 23 (2003) (O'Connor, J., concurring in the judgment) (*quoting Harmelin v. Michigan*, 501 U.S. 957, 996-997 (1991) (Kennedy, J., concurring in part and concurring in judgment)). For a sentence to violate the Eighth Amendment there must be a threshold showing of gross disproportionality through a comparison of "the gravity of the offense [and] the harshness of the penalty." *Id*. at 28. If gross disproportionality is shown, the court can conduct a comparative analysis "by considering the sentences the state imposes on other crimes" and the sentences other jurisdictions impose for the same crime. *Id*. at 23-24. Strict proportionality between the crime and the sentence is not required and a comparative analysis within and between jurisdictions is not mandated or appropriate absent any showing of gross disproportionality. *Id*. *See also Rummel v. Estelle*, 445 U.S. 263, 281(1980).

In the case before this Court, Petitioner admitted to stabbing another man to death. He was originally charged with first degree murder. The State offered and Petitioner accepted a plea to voluntary manslaughter with a sentencing range of thirteen (13) years to twenty-one (21) years. While the minimum sentence Petitioner was offered is two and a half years more than the presumptive sentence for voluntary manslaughter, it is not grossly disproportionate to Petitioner's crime.

Petitioner claims his aggravated sentence of seventeen (17) years is excessive because the minimum sentence in the plea agreement of thirteen (13) years accounted for the gang enhancement yet the trial judge also aggravated his sentence based on the gang-related nature of the murder. The state courts reviewed the plea agreement, the change of plea hearing transcript and the sentencing transcript. None of those documents support Petitioner's position. The plea agreement did not state that the minimum sentence accounted for the gang enhancement. The plea agreement contained a specific paragraph stating Petitioner agreed to waive his trial rights including the right to "any jury determination of aggravating factors beyond a reasonable doubt." (Doc 11-1, Exhibit B, p 8). The Petitioner further agreed, "I also agree that the Court, using a standard of preponderance of the evidence, may find the existence of aggravating or mitigating factors which may impact my sentence of disposition." *Id*. Likewise, at the change of plea hearing the trial judge specifically asked whether Petitioner understood that she could find aggravating factors and he responded that he did understand.

Petitioner was sentenced within the middle of the agreed upon range after pleading guilty to manslaughter. As part of the plea, the State agreed to drop the remaining charges against Petitioner. The seventeen (17) year sentence was not grossly disproportionate to Petitioner's crime and the state courts' decision in this matter was not contrary to federal law nor an unreasonable application of it. The Court recommends denying this claim.

In Petitioner's second claim, he argues a Fourteenth Amendment due process violation for the alleged double counting of the gang enhancement in his sentence. Petitioner contends the minimum sentence offered in his plea agreement of thirteen (13) years represented a two and a half year increase over the presumptive sentence

to account for the gang-related nature of the murder. The plea agreement did not contain any suggestion that the minimum sentence accounted for the gang enhancement. The plea agreement does state that the trial judge is permitted to find aggravating and mitigating factors by a preponderance of the evidence. At the change of plea hearing, the trial judge specifically asked Petitioner if he understood that she could find aggravating and mitigating factors by a preponderance of the evidence and Petitioner responded that he did understand. The trial judge told Petitioner that she would be determining a sentence that would be in the aggravated range and she asked if he understood that and he responded that he did understand.

Based on the plea agreement and the change of plea hearing transcript, the trial court did not violate Petitioner's right to due process when it aggravated his sentence based on the gang enhancement. Petitioner waived his right to have a jury determine aggravating factors and he acknowledged that the trial judge was permitted to aggravated his sentence based on a preponderance of the evidence standard. The plea agreement and change of plea hearing transcript do not support Petitioner's position that the minimum agreed upon sentence already accounted for the gang enhancement. The aggravated sentence that fell in the middle of the agreed upon range was not contrary to federal law nor an unreasonable application of the law. Petitioner's second claim should be denied.

In a second motion of supplemental authority, Petitioner argues for the first time that his sentence was aggravated in violation of *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (Doc 16). First, the Court should reject this second supplemental authority because Petitioner cannot raise new claims for relief in a reply brief. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir.1994) ("A Traverse is not the proper pleading to raise additional grounds for relief."), *cert. denied*, 514 U.S. 1026 (1995); *see also*

-14-

*Delgadillo v. Woodford*, 527 F.3d 919, 930 fn. 4 (9th Cir.2008) ("Arguments raised for the first time in Petitioner's reply brief are deemed waived.") (citation omitted).

Furthermore, any validly raised *Blakely-Apprendi* issues in this case would fail on the merits. Petitioner expressly agreed in his plea agreement and in the change of plea hearing to permit the trial judge to determine aggravating factors by a preponderance of the evidence.

**III. RECOMMENDATION**

Based on the foregoing, the Magistrate Judge recommends that the District Court, after its independent review and analysis, enter an order DENYING the Petition.

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within fourteen (14) days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **cv-08-438-FRZ**.

The Clerk is directed to mail a copy of the Report and Recommendation to Petitioner and counsel for Respondents.

DATED this 30th day of March, 2010.

_____
CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE